## PETERSON *v.* GRESHAM.

EXCEPTIONS.  Unless the point is saved by an *exception*, this court can not review it.

EVIDENCE—*objection*.  It is not necessary that evidence, to be relevant, should bear directly upon the issue.  It is admissible if it tends to prove the issue.

In an action of trover for converting cotton, testimony showing the *value* of cotton at another place, in the same State, about the time of the alleged conversion, is admissible.

Where part of the statement of a witness, the whole of which is objected to, is admissible, and the objection does not point out the inadmissible portion, the whole statement is properly admitted.

Proof of the value of an article in gold is not admissible where the recovery must be had in *legal tender.*

RECEIPT. A payment of money may be proved by oral evidence, though a written receipt was given.

EXCESSIVE DAMAGES. To warrant this court in setting aside a verdict for excessive damages, the damages must be so flagrantly excessive that the mind at once perceives that the verdict is grossly unjust.

NEW TRIAL FOR NEWLY DISCOVERED EVIDENCE. On a motion for a new trial, on the ground of newly discovered evidence, the moving party *must prove* to the satisfaction of the court that he has used due diligence.

INSTRUCTIONS. Where the court, in a trover case, instructs the jury that if they "believe, from the evidence, that the cotton in controversy belonged to the plaintiff, and that the defendant got possession of it without authority from the owner, and converted it to his own use, or failed to deliver the cotton to plaintiff on demand, they must find for the plaintiff the value of the cotton at the time of the conversion, with six per cent. interest on the same, from the date of conversion;" and, also, "that, even if they should find, from the evidence, that the cotton in dispute belonged to the plaintiff, and that the defendant got it and disposed of it before the surrender, and had nothing to do with it after that time, they will assess the damages at the value only of the cotton proven at the time it was taken and disposed of, and not its value at any other time, even if the demand was subsequently made." The law is correctly declared as to the time the damages should have relation to, and the *instructions are proper.*

*Appeal from Union Circuit Court.*

Hon. JOHN T. BEARDEN, Circuit Judge.

GARLAND & NASH, and CARLETON, for appellants.

The *general issue* in *trover* puts in issue the plaintiff's title as well as the conversion. *Stone v. Waggoner,* 3 *Eng.,* (8 *Ark.,*) 206; 2 *Green. Ev., s.* 648; 2 *Sand. Pl. & Ev.,* 872 and 887; 1 *Chitty's Pl.,* 436; (5 *Am. edit.;*) 2 *Selwn. N. P.,* 1068, (2 *Am. edit.,*) *Bulwer's N. P.,* 48; *Danley v. Rector,* 10 *Ark.,* 211.

In rebutting title in plaintiff, defendant may prove title in a stranger. *Daws v. Peck,* 8 *Tenn.,* 330; *Schermerhorn v. Van Valkenburg,* 11 *J. R.,* 529: *Kenedy r. Strong,* 14 *ib.,* 128; *Rotan r. Fletcher,* 15 *ib.,* 207.

On principle, any evidence which would show the plaintiff was not the owner, either special or general, according as alleged, would be admissible and material.

In trover the plaintiff waives the right to recover damages for the manner of taking. *Bacon's Abr. Trover, A.,* 3; *Sedgwick on Damages, top p.,* 512; (3 *revised ed.*)

The value at the time of conversion, with interest, is the rule adopted by this court in *Ryburn v. Pryor,* 14 *Ark.,* 505. This rule, either with or without interest, is supported by the following authorities, viz: In England—*Mercer v. Jones,* 3 *Camp.,* 476; *French v. Blunt,* 7 *Car. & Payne,* 478; *Cook v. Hartle,* 8 *ib.,* 568; *Read v. Fairbank,* 24 *Eng. Law and Eq.,* 220. In New York—*Kennedy v. Strong,* 14 *J. R.,* 128; *Hallett v. Nonion, ib.,* 273; *Dillenback v. Jerome,* 7 *Cow.,* 294. In Massachusetts—*Kenedy v. Whitwell,* 4 *Pick.,* 466; *Sargent v. Franklin Ins. Co.,* 8 *ib.,* 90; *Greenfield Bank v. Leavitt,* 17 *ib.,* 1; *Pearce v. Benjamin,* 14 *ib.,* 356; *Barry v. Bennet,* 7 *Metcalf,* 354; *Fowler v. Gilmon,* 13 *ib.,* 367.

In *State v. Jennings, use, etc.,* (10 *Ark.,* 451,) this court said *arguendo:* "If the verdict should be found very decidedly against the weight of evidence, so much so as to leave no doubt but that an intelligent, unbiased mind would have decided differently, the decision of the circuit court refusing a new trial would have been reversed and a new trial ordered."

The grounds were sufficient. The admission of Robinson and Sims' evidence, and the remark of the court refusing to exclude it, and the admission of Ingram's evidence, on the part of appellee, against the law, could not do otherwise than surprise the appellant. Such evidence was not cumulative, for appellant offered none on that point, and would, in all probability, change the verdict on a new trial. *Burris v. Wise,* 2 *Ark.,* 33; *Robins v. Fowler, ib.,* 133; *Olmstead v. Hill, ib.,* 346; *Bourland v. Skinner,* 11 *ib.,* 671; *Kirkpatrick v. Wolfe,* 17 *Ark.,* 100.

JOHN H. ASKEW, for appellee.

There is no error in refusing to grant a new trial on account

of excessive damages, as the jury had the right to assess the damages at the value of the property at the time of demand. *Sedgwick on the Measure of Damages*, (3 ed.,) 505, top p.; 479, side page.

HARRISON, J.

This is an action of trover, in the Union circuit court, by William G. Gresham, against Frederick A. Peterson, for twelve bales of cotton. At the October term, 1867, the defendant appeared and pleaded the general issue, and at the April term, 1868, the case was tried by a jury, and a verdict returned for the plaintiff for $1,333\frac{80}{100} damages. The defendant moved for a new trial upon the following grounds: 1. That the court, at the previous term, refused to require the plaintiff to answer interrogatories exhibited against him by defendant for discovery. 2. That illegal evidence was admitted on the part of the plaintiff. 3. That legal evidence offered by the defendant was excluded. 4. That the court misdirected the jury at the instance of the plaintiff. 5. That the damages were excessive. 6. That new evidence, material for the defendant, had been discovered since the trial. The court overruled the motion, and he excepted and appealed. No exception was taken at the time to the refusal of the court to compel the discovery sought by the defendant, and the petition, and the action of the court upon it, constituted no part of the record before us. Omitting to except, the defendant acquiesced in the ruling of the court, and waived his right to object to it afterwards.

Upon the trial the defendant moved to exclude from the jury the evidence of B. F. Robinson, for irrelevancy. His testimony was: "That cotton in Camden, about the first to the tenth of June, 1865, was worth thirty-seven and a half cents per pound, in greenbacks." The conversion was proven to have been in Union county, in February or March, preceding.

It is an established rule, governing in the production of evidence, that "the evidence offered must correspond with the

allegations, and be confined to the point in issue," but it is not necessary that it should bear *directly* upon the issue.

"It is admissible if it *tends* to prove the issue, or constitutes a link in the chain of proof; although alone, it might not justify a verdict in accordance with it." *Green. Ev.*, sec. 510.

The fact here proven, is one from which an inference of the value of the cotton converted, at the time and place of conversion, may be drawn.

".A presumption of fact is properly an inference of that fact from other facts that are known; it is an act of reasoning. In drawing an inference from facts proved, regard must always be had to the facility that appears to be afforded for explanation or contradiction. No person is to be required to explain or contradict until enough has been proved to warrant a reasonable conclusion against him, in the absence of explanation or contradiction; but when such proof has been given, and the nature of the case is such as to admit of explanation or contradiction, human reason can not do otherwise than adopt the conclusion to which the proof tends, if no explanation or contradiction is offered. A presumption then is a probable inference, which our common sense draws from circumstances usually occurring in such cases. The slightest presumption is of the nature of probability; and there are almost infinite shades, from the lightest probability to the highest moral certainty. If the circumstantial evidence be such as to afford a fair and reasonable presumption of the fact to be tried, it is to be received and left to the consideration of the jury, to whom alone it belongs to determine upon the precise force and effect of the circumstances proved, and whether they are sufficiently satisfactory and convincing to warrant them in finding the fact in issue." 1 *Phillips on Evidence*, 598.

The evidence offered was not to prove that the cotton was worth thirty-seven and a half cents per pound, but to ascertain and determine what its value was; and a fair and reasonable presumption of such value can be drawn from it, for, directed by common experience and knowledge of the ordi-

nary fluctuations in the price of this staple production of our State, the conclusion is irresistible, that if it was worth so much three or four months later, it was worth, even in the remotest part of the State, at the time of conversion, five cents per pound, and the jury might draw any other that is more reasonable or likely. Enough then was proved to warrant a conclusion against the defendant, in the absence of explanation or contradiction. He also, for the same reason, moved to exclude the evidence of Hal. Sims. It was that cotton was worth in June, 1865, twenty-five cents *in gold;* and that he had sold some in that month for forty-eight cents. As the judgment could be for such money only as the plaintiff would have a right to demand in satisfaction of it, the price in gold, without any evidence, and there was none, as to the relative values of gold and legal tender notes or currency, affords no criterion for ascertaining the value of the cotton. If, then, we are to understand the witness as referring exclusively to the gold price, his evidence should have been excluded; but if that portion of it relating to the price for which he had sold some, should be construed to mean that he had sold at that price in currency, a question not necessary for us to decide, so much of it was relevant, and the defendant, not discriminating between that which was relevant and which was not, the entire statement was rightfully admitted.

But, though the whole were irrelevant, and should have been excluded, it could have had no influence upon the verdict to the defendant's prejudice, as clearly appears by the amount of damages assessed; and, as there was sufficient competent evidence to establish the value, the court very correctly refused to disturb it on account of its admission. *Weaver v. Caldwell, exr.,* 9 *Ark.,* 339. *Owen, as admr., v. Jones,* 14 *ib.,* 503. *Sharp v. Johnson,* 22 *ib.,* 79. *Creary v. Sprague,* 12 *Wend.,* 41. The defendant having proved by J. H. Ingram that the plaintiff, during the war, sold thirty-six bales of cotton to the Confederate States, and attempted to establish, by him and other witnesses, that the cotton, which the controversy was about,

was part of that, the plaintiff called the same witness, and proved by him that, after the surrender of the Confederate armies, he delivered to one Peter M. Brown thirty-six bales, which were carried to Trenton, La., and delivered to one Anderson, as the agent of one Lewis, a United States cotton agent. Plaintiff asked the witness if he saw, when the cotton was delivered to Brown, any person give him a receipt for government cotton, and for what number of bales? The court permitted the witness to answer the question, against the objection of the defendant, and he said Brown gave the plaintiff such a receipt for thirty-six bales.

The design of eliciting this evidence was, not to prove the contents of the receipt, but that the same cotton the plaintiff sold the Confederate States, and which the witness had stated had been left in his possession at the time of his purchase, was, after the war, turned over to the United States. "A payment of money, or an admission to that effect, may be proved by oral evidence, though a written receipt was given." 1 *Phil. on Ev.*, 586; *Humphries v. McGraw*, 5 *Ark.*, 61; *Vaugine, et al., v. Taylor*, 18 *Ark.*, 65.

The defendant, upon cross-examination of the witness, asked him if Anderson, after the cotton was delivered, did not load witness' wagon, which conveyed the cotton, with groceries for Thomas J. Bradley, of Eldorado, Ark., which question the court, upon objection of the plaintiff, would not permit him to answer. The fact then attempted to be proven, had no connection whatever with the case, and was entirely irrelevant to the issue.

The instruction given for the plaintiff, objected to, is as follows: "If the jury believe, from the evidence, that the cotton in controversy belonged to the plaintiff, and that the defendant got possession of it without authority from the owner, and converted it to his own use, *or failed to deliver the cotton to plaintiff on demand*, they must find for the plaintiff the value of the cotton at the time of the conversion, with six per cent. interest on the same, from the date of conversion." This in-

struction is unobjectionable, except that part in relation to demand. As there was no evidence tending to prove a demand, that portion is irrelevant; but, if not so absolutely abstract as might not mislead the jury, it was corrected, and its influence on their minds removed, by an instruction given at the instance of the defendant, which we find in his bill of exceptions, as follows: "3. That, even if they should find from the evidence that the cotton in dispute belonged to the plaintiff, and that the defendant got it and disposed of it before the surrender, and had nothing to do with it after that time, they will assess the damages at the value only of the cotton proven at the time it was taken and disposed of, and not its value at any other time, even if the demand was subsequently made." The two instructions taken together, as they should be, correctly declare the law in respect to the time the damages should have relation to. *Abraham v. Wilkins*, 17 *Ark.*, 292; *Ingram v. Marshall*, 23 *Ark.*, 115; *Wood v Wylds*, 11 *Ark.*, 754; *Burton v. Merrick*, 21 *Ark.*, 357; *McNeill v. Arnold*, 22 *Ark.*, 477.

We have thus noticed all the objections, raised at the trial, to the evidence and instructions of the court, and find no error. That the damages were excessive, is the next objection. To warrant this court in reversing a judgment, on the ground of excessive damages, they must be so flagrantly excessive that the mind at once perceives that the verdict upon which it is founded is grossly unjust. According to the evidence of one of the witnesses, the weight of the bales was five hundred pounds each, and, by an easy calculation, it is seen that the damages assessed do not exceed one-half what the same quantity of cotton was worth in Camden, three or four months before, with interest from the time of conversion. There is therefore not the least ground for the objection that the damages are excessive.

The remaining cause assigned for a new trial was the discovery of new evidence. It is unnecessary to notice this newly discovered evidence, as the defendant simply alleges in his motion that he has *used due diligence* in the preparation of his

case, and in procuring evidence before the trial, but states no facts or circumstances to show any diligence whatever.

Due diligence, or what constitutes it, is to be determined by the court, not by the party alleging it, and the facts and circumstances must be shown, that the court may decide whether it has been used or not. *Burriss v. Wise and Hind*, 2 *Ark.*, 33; *John Robins v. Absalom Fowler, ib.*, 133.

Finding no error, the judgment of the court below is affirmed.

GREGG, J., dissenting, says:

We do not differ with the majority of the court on several of the assignments of error in this case. Our objections are based upon what we conceive to be a just application of established rules of law.

The testimony tends to show bad faith, and, upon the whole case, the finding and judgment may not be unjust.

It may be considered settled, that he who sues in trover can not have exemplary damages or smart money, as in forcible trespass. The measure of damages is the value of the property at the time and place of conversion, and interest on such value from that date until the judgment. See *French v. Blunt*, 7 *Carr and Payne*, 478; *Kennedy v. Strong*, 14 *Johnson*, 128; *Hallet v. Novion, ib.*, 273; *Dillenback v. Jerome*, 7 *Cow.*, 294; *Kennedy v. Whitewell*, 4 *Pick.*, 466; *Greenfield Bank v. Leverett*, 17 *Pick.*, 1, and 14 *Pick.*, 356; *Barry v. Burnett*, 7 *Met.*, 354, and 13 *ib.*, 267; *Hayden v. Bartlett*, 35 *Me.*, 203; *White v. Webb*, 15 *Conn.*, 302; *Carter v. Freeland*, 17 *Mo.*, 382; *Helderbrand v. Brewer*, 6 *Texas*, 45.

In cases where defendants have wrongfully held possession of property, and there was an increase in value after taking, and before the demand, suit or actual conversion, it has been correctly ruled that the plaintiff was entitled to the highest market value during such time; but when the property was actually converted and passed beyond the possible reach of the

plaintiff, then, in trover, its value and the interest is the fixed measure of damages.

The majority of the court do not differ with us as to the rule of law, but in its application in this case.

This plaintiff proved by witness Staples, that, in January, 1862, he, the plaintiff, hauled twelve bales of cotton, weighing about 500 pounds each, to Eldorado landing, in Union county, marked with plaintiff's initials, and they remained there until the spring of 1863, when the plaintiff had them hauled back three miles to a house, where they remained until 1865, at which time the defendant claimed the cotton and had it re-hauled to the landing, and soon thereafter, in February or March, 1865, and before the surrender, it was taken off by a boat.

After the surrender, plaintiff called upon witness about the cotton, and witness called upon the defendant, who said he and Newton had bought the cotton, but there was a mistake and he would make it all right with the plaintiff. Witness did not know the value of cotton at the time it was taken and shipped; but he had heard of some selling at seven cents per pound, some at $20 and some at $37 per bale, in gold.

Newton testified that, after the surrender, the plaintiff called upon him, and they went to the defendant, who told plaintiff he had got his twelve bales of cotton and he would pay him for it—would make it all right.

Plaintiff then introduced B. F. Robinson, who was allowed to testify, over the defendant's objections, that between the first and tenth of June, 1865, cotton, at Camden, was worth 37½ cents per pound, in greenbacks; that he did not know what cotton was worth in February or March of that year.

Hal. Sims was then introduced and allowed to testify, also against the objections of the defendant, that in June, 1865, cotton was worth twenty-five cents in gold; that he sold some in that month for 48 cents. The plaintiff then closed his evidence, and the defendant moved the court to exclude the evidence of Robinson and Sims from the jury. The court overruled the motion and the defendant excepted.

From the inception to the close of the testimony in this case, there is not one particle of direct evidence as to the value of the cotton, either at the time or place of conversion, except Staples' testimony that he *heard* of some being sold for gold, which the majority of this court say "affords no criterion for ascertaining the value of the cotton, without proof of the relative value of gold and legal tender notes, and no such proof was made." It may be said Eldorado landing, where the cotton was taken, and Camden, in which the value was proved, are both in Arkansas, and not one hundred miles apart; yet they are not one—not the same place—and the proof of value at one point raises no presumption of an *equal value* at other points; nor is it the province of a jury, without evidence, to infer such value.

It devolves on him who first asserts the fact in court, to bring evidence of the value of goods where taken. If he can not show their value on the exact ground where seized and converted, he can show their value at some point more or less remote, and then show the relative situation of the two places, the cost of transportation, insurance, etc., and thus bring facts home to the jury, from which they can find the value at the place of conversion.

This conversion was in February or March; the value was proved in June following. The conversion was before the close of the war—the value proved afterwards. To urge that the jury, without any proof as to the fluctuations in trade, the means of presenting the cotton, the cost of storage, etc., could, from their own knowledge, infer or find the true value, is assuming what is not supported by authority.

Whenever a plaintiff goes beyond the pale of the law, and selects his market, and chooses his own time in which to prove value, and then fails to show by testimony facts demonstrating that such value did exist at the conversion, he fails in his case, and we can see no sufficient grounds to hold that this case does not come within the rule. If the plaintiff could pass over vital changes in commercial relations over three months'

time, and from one county to another, the same legal indulgence would allow him to go from one State to another, or from one month or year to another; hence we are of opinion the court below did commit error in refusing to exclude the evidence of Robinson and Sims, when the plaintiff had closed his evidence, and introduced no proof as to the relative value of cotton in March and June, or at Eldorado landing and Camden.

We think the jury legally could not have found their verdict upon the evidence before them, and that that fact is apparent from their verdict. Had they found according to Robinson and Sims' testimony, their verdict would have been largely over $2,000; and, as stated by the majority of this court, they could not have found upon Staples' testimony, because he only spoke of hearsay relative worth of cotton and gold. This was all the evidence of value, and the jury found $1,333$\frac{80}{100}$. Their verdict then must have rested upon their own personal opinions, arguments or concessions of counsel, or other facts and circumstances not in evidence. So their verdict shows they did not find according to the evidence.

The jury are not to determine issues in court by their own opinions or knowledge of commerce and the value of merchandise. If such were the rule of law, all that could be required would be to prove the taking and give a description of the property, and from that the jury would make up a verdict. But the courts universally hold that, in such case, nothing more than nominal damages could be given. A plaintiff must prove value, and the jury must find according to the evidence. With no proof to show its relevancy, we think it was not competent for the court to submit to the jury the value proved at Camden so long subsequent to the conversion.

These conclusions have caused us to dissent from the majority of the court upon the application of this evidence.