SOUTHERN COTTON OIL COMPANY v. CAMPBELL.

Opinion delivered January 27, 1913.

1. PLEADINGS—AMENDMENT TO CONFORM TO PROOF.—When the complaint fails to state a cause of action, in an action for damages for personal injuries, and evidence is introduced without objection, tending to establish negligence, the complaint will be treated as amended to conform to the proof. (Page 384.)

2. PLEADING—SUFFICIENCY OF ALLEGATIONS IN COMPLAINT.—In an action for damages for personal injuries, where the complaint charges the relation of master and servant between the plaintiff and defendant, that defendant was negligent in furnishing defective belts, was negligent in failing to discover said defect, and in not repairing same, in failing to furnish proper light, and in crowding the gin-stands together, thereby shutting off the light and concealing the defects and dangers from the plaintiff, such allegations are sufficient to admit proof of specific facts, and such complaint would have been good on demurrer. (Page 384.)

3. VERDICT—SUFFICIENCY OF EVIDENCE.—Evidence that plaintiff was injured by the breaking of a leather belt while working at a gin-stand in defendant's gin house, that the belt knocked him down, that the belt was defective, that defendant had notice of the defect, that the foreman negligently failed to discover and repair the defect, and that defendant did not know of the defect, is sufficient to warrant the jury in finding that the defendant failed to exercise ordinary care to discover the defect and to repair the belt, and that such negligence was the proximate cause of the injury to plaintiff. (Page 387.)

4. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—To entitle a party to a new trial on the ground of newly discovered evidence, the appellant must show that he used due diligence in discovering and producing the same; so when appellant had knowledge that appellee was subject to epilepsy, a new trial should not be granted on a showing by appellant that it had discovered since the trial

that appellee's shoulder had been dislocated before the time of the injury alleged in the complaint, which dislocation was first due to a fall when appellee was drunk, and afterwards by epileptic fits.   (Page 387.)

5.   WITNESSES—LEADING QUESTIONS.—The question of when a party should be allowed to put questions to his own witness which suggest the answers, rests largely in the discretion of the trial judge. (Page 389.)

6.   TRIAL—CONDUCT OF TRIAL JUDGE.—In order to obtain a review of the question of the propriety of remarks or conduct of the judge during the trial, the remarks must be called to the specific attention of the court, and a correction thereof asked, or they must be objected to or excepted to at the time.   (Page 389.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; affirmed.

STATEMENT BY THE COURT.

This is a suit by the appellee against the appellant for personal injuries. The complaint alleged that the plaintiff was employed by defendant to work at one or more of its gin-stands, operated by means of belts connecting the gin-stands; that said belts were exposed and without guards to shield them and protect the employees; that one of the belts had become unsound, out of repair and unsafe; that the employee whose duty it was to keep said belt in repair, by the exercise of ordinary diligence, should have known of the unsafe condition of said belt; that plaintiff was employed to work on a night shift, and had no knowledge of the defective condition of the belt; "that the lights furnished by the defendant to its employees working at night were so dim, and said gin-stands were so crowded together as to shut off said light, thereby concealing from plaintiff said defective belt and otherwise rendering the work at which he was engaged and the place at which he worked dangerous and unsafe;" that when the belt by which the gin-stands were operated gave way it was thrown out with great force, striking plaintiff on his shoulder, knocking him down and dislocating his shoulder joint, disabling the plaintiff by depriving him of the use of his arm and shoulder whereby he suffered great pain, etc.

And, further, plaintiff alleged negligence "in the following particulars, towit: By placing plaintiff in a dangerous and unsafe place to perform the work assigned to him, and not furnishing him a safe place in which to work; by furnishing him a defective belt as aforesaid; by failing to use due diligence in discovering the defective condition of said belt; by not repairing said belt after knowledge of its defective and dangerous condition; by not shielding said belt with guards so as to protect him; by failing to furnish him sufficient lights to enable him to see how to perform his labors at night time, and by crowding said gin-stands so close together as to shut off the light furnished and thereby concealing from him defective conditions and dangerous places. Plaintiff further alleged that his injuries were caused by the negligence of the defendant as aforesaid, and with no fault on his part." He prayed judgment for the sum of $10,000.

The answer denied the material allegations of the complaint and set up contributory negligence of the plaintiff as a defense.

There was a trial by a jury and a verdict and judgment for $1,500. From this judgment this appeal has been duly prosecuted.

*Ratcliffe & Ratcliffe*, for appellant.

1. The complaint does not state a cause of action, and this defect was not waived by pleading over. Kirby's Dig. § 6096; 67 Ark. 184; 65 Ark. 495; 64 Ark. 510.

The allegations as to the "unsafe condition" of the belt, and as to the "place where plaintiff worked being dangerous and unsafe" do not tend to show that a reasonable person ought to have foreseen that a defective belt could have been dangerous to plaintiff or that the place could have been dangerous on account of a defective belt. 36 Ark. 607; 79 Ark. 608, 616-617. Those allegations were not statements of facts showing any duty or violation of duty, but statements of mere conclusions, and should be disregarded. 64 Ark. 39; 43 Ark.

296. The mere happening of the accident, where there was no fact alleged showing that defendant should have anticipated it, created no liability. 90 Ark. 326; 79 Ark. 437. The master does not insure the servant against accidents nor guarantee that appliances may not prove defective. 46 Ark. 555; 51 Ark. 467.

2. There is no sufficient evidence to show that defendant was negligent. A belt is not inherently dangerous, even if it breaks. 29 Cyc. 595 and cases cited. The burden of proof was on the plaintiff to show that the defendant was guilty of negligence and that the injury should have been anticipated as the reasonable and probable result of such negligence. There must have been substantial evidence that the negligence was the proximate cause of the injury, otherwise it was the duty of the court to direct a verdict for the defendant. 124 Fed. 113, 122. There was no sufficient legal evidence to show that the belt was defective or that defendant was chargeable with notice of the defect. Neither was there sufficient legal evidence that defendant had or should have had notice of any defect. Notice to Morris or McCoy was not notice to defendant. 26 Cyc. 1147. The verdict was contrary to the physical facts in evidence. The verdict based upon plaintiff's contention that his shoulder was dislocated by a blow upon the shoulder which must have come from above (since he claims the belt struck his head also) or from the back, is so contrary to the physical facts and so contrary to reason as to shock the sense of justice. 70 Ark. 385; 79 Ark. 608, 623-7; 15 S. W. 147. See also 10 Ark. 492; 34 Ark. 632.

3. The motion for new trial should have been granted because of the newly discovered evidence in regard to plaintiff's being subject to epileptic fits, of the bearing of which on this case appellant had no knowledge prior to the trial, and which if produced at the trial would have changed the verdict. 64 Ark. 510; 11 Ark. 671, 674. A new trial on the ground of newly discovered evidence will be granted the more readily where the verdict is

contrary to the weight of evidence, or where, under the evidence, it is doubtful.   29 Cyc. 903, 904.

4. The court erred in allowing leading questions to be asked and answered.   13 Ark. 474; 69 Ark. 648, 653; 7 Ark. 435; 15 Ark. 109; 20 Ark. 443; 25 Ark. 235; 21 Ark. 298.

5. The cause should be reversed because of the tone and manner of impatience and petulence of the trial judge in ruling upon defendant's objections to leading questions, which was necessarily prejudicial to the defendant.   71 Ark. 65.   And while no exception was saved at the time to the court's conduct, we submit that it was not necessary, since, where the tone, manner and emphasis of the court are equivalent to an expression of opinion prejudicial to defendant, no subsequent explanation or direction to the jury could cure the error.   60 Ark. 76, 89; 58 Ark. 473.

*Thomas T. Dickinson* and *Miles & Wade,* for appellee.

1. The allegations of the complaint are sufficient to set out, and do present, the relation of master and servant, and in detail charge appellant with negligence in several different specific ways.   It states a cause of action, but if it did not it will be held as amended to conform to the evidence admitted without objection.   62 Ark. 265; 59 Ark. 215; 97 Ark. 86.

2. The evidence fully sustains the verdict.   From the evidence it is plain that appellant had notice of the defect in the belt, or was negligently ignorant of the defects.   51 Ark. 479.   And as to the question whether the evidence was legally sufficient, the court will consider it in the light most favorable to the appellee.   97 Ark. 486.   Moreover, it was purely a question of fact which was properly left to the jury.   67 Ark. 399; *Id.* 531; 73 Ark. 377; 75 Ark. 111.

3. The discretion of the trial court in passing upon a motion for a new trial based on alleged newly discovered evidence will not be lightly interfered with.   Here

no proper diligence is shown on the part of appellant, while the alleged newly discovered evidence is not contradictory of evidence produced at the trial. That feature of it as to the shoulder having been previously dislocated, is merely cumulative. 11 Ark. 673; 37 Ark. 337; 25 Ark. 335; 26 Ark. 504; 90 Ark. 435; 91 Ark. 366; 99 Ark. 411.

4. There is no reversible error on account of leading questions. They are permissible at times, and that is a matter resting in the discretion of the trial court. 63 Ark. 120. Moreover, appellant asked questions that brought out the same evidence that was brought out by the questions now objected to. 97 Ark. 109; 76 Ark. 276; 58 Ark. 381; 65 Ark. 371.

5. Why cumber the record with objections to the court's rulings where it is admitted no exceptions were saved? 100 Ark. 122; *Id.* 143; *Id.* 237; *Id.* 442; 38 Cyc. 1324.

WOOD, J., (after stating the facts.) 1. Appellant insists here for the first time that the complaint does not state a cause of action. There was no demurrer to the complaint. The testimony was fully developed without objection, tending to establish negligence in certain particulars, which we will hereinafter mention, and sufficient to warrant the finding of the jury and the judgment of the court. Therefore, even if the complaint in the first place had failed to state a cause of action this court would treat the same as amended to conform to the proof. *Texarkana Gas Co.* v. *Orr,* 59 Ark. 215; *Fletcher* v. *Ark. National Bank,* 62 Ark. 265; *St. L., I. M. & S. Ry. Co.* v. *Bird,* 106 Ark. 177.

Moreover, we are of the opinion that, while the complaint was loosely drawn and in some respects defective, yet it was sufficient even if it had been tested by demurrer. It showed a relation of master and servant and contained allegations sufficiently specific to charge the master with negligence in failing to exercise ordinary care to furnish the servant with safe machinery and a safe place in which to perform his work. It charged

that the master was negligent in furnishing appellee defective belts (describing the defect), by failing to use due diligence in discovering the defect, and by not repairing the same after having knowledge of its defective condition; and that the appellant was negligent in furnishing him an unsafe place in which to work, "by failing to furnish him sufficient lights to enable him to see how to perform his labors at night time, and by crowding said gin-stands so close together as to shut off the light furnished and thereby concealing from him defective condition and dangerous places, where appellee had to work in the absence of sufficient light." These allegations were sufficient to admit proof of specific facts, which was made.

2. Appellant contends that the evidence was not sufficient to support the verdict.

One witness testified that he was in the lint room with Robert Campbell when he was hurt, about ten feet from him. He was looking at him. Campbell had started to the gin-stand and before he got there the belt broke and struck him and knocked him unconscious. "It, says the witness, knocked him down sorter over the gin-stand, across the aisle; he didn't know anything at all." Witness found a little blood on his head. The belt hit him. Witness knew that it did because he was "looking straight down the aisle, looking at him. I could tell when it popped that it hit him. Was looking at him when it knocked him down."

Another witness stated that he did the same work in the day time that Robert Campbell did at night, at the same gin-stands. The belt was defective. He saw it about 3 o'clock during the afternoon before Robert Campbell was hurt. He told "a fellow to tell Arthur Frazier to fix it." Frazier was the official belt inspector and repairer. His duties were to see after the belts and see that they were laced.

A witness testified that he was told by one of the employees working at the gin-stand to tell Frazier that the belt was out of repair and was nearly in two, but that

he forgot to tell Frazier. This witness stated that he was Arthur Frazier's assistant. He was paid more than the other employees because of his additional responsibilities. The night foreman "jacked me up several times," says he, meaning that he was not fully performing his duties.

Arthur Frazier testified as follows: "My duty was to fix the belts. I had charge of the belts and watched them. I have seen lots of belts similar to this break. I stayed there at night. That is my work." When asked how often he got around to see if the belts were in good order he stated: "It is according to what I have to do. The first thing I do is to inspect the belts in the lint room; that is when I go on at 7 o'clock. It takes me about two hours to make the round. I go back over it again when I get around; hadn't been long left Campbell when he was hurt. I examined the belt when I was there just before Campbell was injured."

The testimony showed that Campbell was injured between 4 and 5 o'clock in the morning.

Another witness stated that he found Robert Campbell lying in the aisle by gin-stand No. 4. The belt was piled up in the aisle and a part of it was on him. Witness moved him. This witness stated that the belt was nearly a foot wide.

A witness, in describing the defective condition of the belt, stated that it was broken about half way across. It was not quite enough to stop it, and didn't stop it. Witness didn't have time to go to work and finish fixing it, and so he told another employee to tell Frazier to fix it.

The testimony was voluminous, but we shall not undertake to set it all out or to analyze it. The above is sufficient to show that the belt on the gin-stand about which appellee was working was defective; that the appellant had notice of the defect; that its foreman and belt inspector, whose duty it was to make examinations during the night for any defects that might occur in the belts "made the rounds" and negligently failed to dis-

cover this defect and to repair it. The appellee had no notice himself that the belt was defective and appellant failed to warn him that same was defective. The above testimony, in short, was sufficient to warrant the jury in finding that the appellant failed to exercise ordinary care to discover the defective condition of the belt and to repair the same, and that such negligence was the proximate cause of the injury to appellee.

The appellant earnestly insists that the evidence showed that it was physically impossible that appellee could have been hurt in the manner indicated, but we are of the opinion, after a careful examination of all the testimony, which it would serve no useful purpose to set forth in detail, and discuss at length, that it was a question for the jury and that there was ample evidence to support the verdict.

The argument of counsel for the appellant is exceedingly plausible, and had the jury accepted his theory we could not have disturbed its finding, but, on the other hand, as the jury have not accepted that theory of the case, as presented by the evidence in the record, the only question for us to consider is whether or not there is sufficient evidence to support the verdict as the jury has rendered it.

3. Appellant contends that it has discovered since the trial that appellee had his shoulder dislocated before the time of the injury alleged in the complaint, and that this dislocation was first due to a fall while Campbell was drunk, and was afterwards frequently caused by epileptic fits; that during his fits he had fallen from porches and such places, causing his arm to become dislocated. Affidavits were attached to the motion tending to show these facts.

We are of the opinion that the appellant did not show proper diligence in seeking to procure this evidence before the trial. Appellant concedes that before the trial it had knowledge that plaintiff was an epileptic, but it says it had "no knowledge that he frequently fell or had fallen during these fits."

Epilepsy means, "The falling sickness; so called because the patient generally falls suddenly to the ground." Webster's Dictionary.

Since appellant concedes that it had knowledge that appellee had epilepsy before the trial, it follows from the very definition of the term that appellant had knowledge that appellee would fall during his epileptic fits, and having such knowledge it must be held to have known of all consequences likely to result by reason of a fall during these epileptic fits, and that the dislocation of the shoulder might have reasonably resulted from such fall.

In the case of *Olmstead* v. *Hill,* 2 Ark. 346, the court held that a party, to entitle himself to a new trial on the ground of newly discovered testimony, must satisfactorily show to the court: (1) That, in preparing the case for trial he was guilty of no neglect or laches; (2) that the new evidence sought to be introduced could not have been procured by due diligence at the former trial. See also *Halliburton* v. *Johnson,* 30 Ark. 723; *Peterson* v. *Gresham,* 25 Ark. 380; *Ark. Mut. Fire Ins. Co.* v. *Stuckey,* 85 Ark. 33.

Therefore appellant has not shown that it exercised proper diligence in securing the evidence it now offers to produce. Knowing that appellee had epileptic fits that were well calculated to cause a dislocation of the shoulder it was appellant's duty in preparing for trial to have made inquiry as to appellee's physical condition before the alleged injury of which he complains in order to ascertain whether or not the accident was the cause of the injury, or whether or not the injury resulted from some other cause. The court did not err in overruling the motion on this ground. It was within the court's discretion.

In *Ward* v. *State,* 85 Ark. 179, we said: "Motions for a new trial on the ground of newly discovered evidence are addressed to the sound legal discretion of the presiding judge; and it is only in case of apparent abuse of that discretion, or of justice, that this court inter-

feres." Citing *Anderson* v. *State,* 41 Ark. 229; *Armstrong* v. *State,* 54 Ark. 364.

4. Most of the questions appellant objects to as leading and which it insists were prejudicial error to allow we do not find to be leading questions. They did not suggest the particular answer but left the witness the alternative to answer yes or no, and to make his explanation. Kirby's Dig. 3136. The questions, for the most part, were in regard to certain situations and conditions of the gin-stands, lights, belts, etc., in the place where appellee was working.

Even if it were conceded that some of the questions were leading, these would not be reversible error under the rule announced in *Wallace* v. *Bernheim,* 63 Ark. 108-120, where we said: "While the general rule is that a party should not be allowed to put questions to his own witness that suggest the answer desired, still there are exceptions to this rule, and the question of when a party should be allowed such a privilege rests largely in the discretion of the presiding judge." See also *Scott* v. *State,* 75 Ark. 142.

5. Appellant seeks to have the judgment reversed because of the alleged conduct of the trial court in making remarks while ruling upon appellant's objections to certain questions, and because of certain questions which the court propounded to the witnesses while on the witness stand and during the progress of the examination. But the appellant concedes that "no exceptions were saved to the court's conduct in this respect" at the trial. In order to obtain a review of the question of the propriety of remarks or conduct of the judge during the trial, the remarks must be specially called to the attention of the court when made, and a correction thereof asked, or they must be objected to and exceptions saved at the time. 38 Cyc. p. 1324, par. 12, and note.

Finding no errors, the judgment is affirmed.