William Jefferson SWAIM *v.*
STATE of Arkansas

CR 74-77                                514 S.W. 2d 706

Opinion delivered October 28, 1974

*Larry R. Froelich*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *O. H. Hargraves*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Swaim was found guilt of delivery of a controlled substance. He was arraigned August 23, 1973, on the charge, which was filed June 19, 1973. He entered a plea of not guilty. Thereafter he employed Larry R. Froelich, who had been admitted to the practice of law in Texas, but not in Arkansas, to represent him. Pretrial motions on behalf of appellant were filed by Froelich on September 7 and September 18. On Monday, October 1, 1973, the date set for trial of the case, the circuit judge forbade Froelich to participate in the proceedings, except by advising his co-counsel William H. Howell during recesses of the trial.

While the record is not as clear as it might be, it seems that the judge had originally approved the representation of Swaim by Froelich, so long as this attorney was associated with local counsel admitted to practice in Arkansas. Sometime during the week preceding the trial date, the judge advised Froelich that he was uninformed about Froelich's credentials. Later the judge called the Supreme Court clerk's office and learned that Froelich had not been admitted to practice in Arkansas. He also learned that Froelich had a Fayetteville telephone number listed in the name of "Howell & Froelich". When the case came on for trial, the judge advised Froelich, who seems to have been a resident of Arkansas, that he was engaging in the unauthorized practice of law in Arkansas and asked him not to participate in the trial in any way, except in the advisory capacity previously mentioned. When Froelich objected the judge said that he would have the sheriff keep Froelich out of the courtroom. Howell, who was present, protested that he could not go to trial. The trial judge and Froelich sharply disagreed about their prior understanding concerning Howell's participation. The judge understood that Froelich had said that Howell was associated in the case and would take over the trial. Froelich denied this and admonished Howell not to go to trial. The judge then

stated: "We are going to trial. You just make your record." Howell then moved for a continuance, stating that he was an associate and partner of Froelich, that Froelich had made the investigation of the case and interviewed the witnesses, that Howell's only participation in the preparation for trial had commenced on the preceding Friday, when he began doing research and working with Froelich, and that he felt that he could not adequately represent Swaim as "lead counsel" upon such short notice. After defendant's motion to quash the jury panel had been denied, the trial proceeded after a noon recess. The defense was entrapment. During the trial, the court noted that a secretary had been bringing messages to Howell into the courtroom during the morning when the motion to quash the jury panel was being heard.

After trial, appellant requested an evidentiary hearing on a motion for new trial, without success.[1]

Appellant asserts that he was denied the effective assistance of counsel, and that the court abused its discretion in failing to grant a continuance and erred in failing to grant a hearing on his "post-conviction" motions. We have concluded that Swaim was prejudiced by the denial of his motion for a continuance by reason of the fact that he was thereby denied effective assistance of counsel.

It is rather apparent that there was a misunderstanding between Froelich and the circuit judge of which both Howell and Swaim were unaware prior to the trial date. It seems clear that not even Froelich knew that he would be completely barred from the courtroom during the trial until the court's pronouncement at the very time the trial was scheduled to commence. We cannot agree that the opportunity for conferences during recesses of the trial afforded an adequate opportunity for Howell to avail himself of the knowledge and information acquired by Froelich in trial preparation. We cannot say that Howell or Swaim was guilty of any lack of diligence in the matter. We are not prepared to say that the record in the case dispels any thought that Howell was not

[1]Appellant filed a second motion for an evidentiary hearing on a motion for new trial, accompanied by an affidavit by Howell. We do not consider either this motion or the affidavit. Even though the state briefed the case as if the affidavit was properly before us, we find that the motion and affidavit were filed after appellant had filed his notice of appeal. The trial court correctly held that it had no jurisdiction to act at that time.

adequately prepared.

Appellant attempted to attack the composition of the jury panel by a motion to quash, and sought to support his motion by the testimony of an expert mathematician. Howell's examination of this witness failed to elicit critical testimony which would have tended to show that the disparity between the makeup of the jury panel and a cross-section of the community, as reflected by the expert's sampling of the voter registration list, could only have resulted from systematic exclusion. After presenting the testimony of the mathematician and of the jury commissioners, Howell had requested that, because of the handicap under which he was operating, he be given a short recess. He stated, for the record, that since he had not talked with the mathematician about his testimony prior to the convening of the court, he was uncertain that he had brought out the essential factors. After the jury was empanelled and sworn, the court granted Howell a 15-minute recess. Thereafter, Howell asked that the motion to quash be "reopened" and the mathematician be recalled for further testimony. When the prosecuting attorney objected, the court refused to grant this request, but permitted Howell to make a statement for the record. In that statement Howell said that the witness, if recalled, would testify that the chances that the particular disparity would occur without discrimination were 820,866,000 to 1.

The only other time, prior to the presentation of evidence, the court afforded Howell to enhance his information about the case and the theories of the defense, was a noon recess from 11:50 a.m. to 1:30 p.m. This recess followed a hearing on a motion in limine as well as the proceedings relative to the motion to quash the jury panel, but preceded the making of opening statements. The court also recessed the trial until 9:00 a.m., October 2, after the state, having presented the testimony of three witnesses, had rested sometime during the afternoon of October 1.

On several occasions, Howell attempted to elicit testimony pertaining to the entrapment defense through leading questions or offered testimony that was improper for the purposes he stated. Some of these will be later discussed in connection with other points for reversal. These errors could well be attributable to Howell's lack of preparation for trial.

Swaim was entitled to have a record made on his motion to quash the jury panel adequate for appellate review of the federal constitutional question he raised, and to be represented at trial by an attorney whose pre-trial preparation enabled him to develop a trial strategy and to plan the appropriate trial tactics for overcoming the effect of evidence he might anticipate would be presented on behalf of the state, and for carrying the burden of proving entrapment. It matters not that it may appear to us, on the record made, that the contentions of appellant on these issues are without merit. It does concern us that the attorney did not have adequate opportunity to acquaint himself with Swaim's version of the case, the state's evidence, the knowledge possessed by defense witnesses and the underlying theory of the defense.

In reviewing the denial of motions for continuance based upon alleged inadequacy of time for preparation for trial by a defendant's attorney, we have been hesitant about finding an abuse of discretion, because of the superiority of the trial judge's perspective, his grasp of the particular situation and his knowledge of developments which are not matters of record. See *Therman* v. *State*, 205 Ark. 376, 168 S.W. 2d 833. Before holding that there has been abuse, we view the totality of the circumstances, particularly on the question of prejudice. See *Wolfe* v. *State*, 255 Ark. 97, 498 S.W. 2d 878.

We find little help from opinions in cases where the inability of counsel to prepare for trial was attributable to the defendant's negligent or dilatory action. Neither can we rely upon those cases wherein prejudice was not alleged or shown. This case is also unlike those in which the inadequacy of trial counsel's preparation was not called to the judge's attention before the trial commenced. In this case, Swaim, the most interested party involved, cannot be held to blame. Even if it might be said that he should have employed an attorney admitted to pratice in Arkansas, we cannot hold him totally responsible when even the circuit judge was misled as to the status of Froelich. Certainly he cannot be said to have been privy to the misunderstanding between Froelich and the circuit judge. Upon the totality of the circumstances and the necessary emphasis upon a defendant's right to the effective assistance of counsel, we have concluded that the motion for continuance should have been granted and that the judgment must, for this reason, be reversed.

We find no error upon consideration of those remaining points for reversal asserted by appellant which are likely to arise upon a new trial.

One Jimmy Brewer was called as a witness by appellant. Howell asked leading questions of the witness and the prosecuting attorney's objections were sustained. Appellant sought to justify this type of examination on the basis that Brewer, who had testified that he had to "work a few deals" in order to get marijuana charges against him dropped, was a hostile witness. According to appellant, Brewer occupied the same position as a government agent would and, because of this, was a hostile witness.

Leading questions on direct examination are allowed under special circumstances which make it appear that the interests of justice require it. Ark. Stat. Ann. § 28-705 (Repl. 1962). Determination whether special circumstances justify direct examination of a witness by leading questions is a matter lying within the sound judicial discretion of the trial judge. *Southern Cotton Oil Co. v. Campbell,* 106 Ark. 379, 153 S.W. 256. One of the special circumstances under which a witness may be asked leading questions on direct examination arises when the witness appears to be hostile to the examiner. *Sinclair v. Barker,* 236 Ore. 599, 390 P. 2d 321 (1964). It is to be assumed, however, that a witness is not hostile to the party by whom he is called. III A *Wigmore on Evidence* (Chadbourne Rev.) 699, § 909 (1970). Although this assumption may not apply to an adverse party, still he is not necessarily a hostile witness. *Sinclair v. Barker,* supra. See *Superior Forwarding Co. v. Sikes,* 233 Ark. 932, 349 S.W. 2d 818. It is only when a witness is patently biased or manifestly appears, or is shown to be, hostile that leading questions are allowable on this ground. *Sinclair v. Barker,* supra; *Rossano v. Blue Plate Foods, Inc.,* 314 F. 2d 174 (5 Cir. 1963).

The determination whether a witness is hostile is to be made by the trial judge, in the exercise of a sound judicial discretion, and may be based upon such circumstances as the demeanor of the witness, his situation and relationship to and with the parties, his interest in the case and the inducements he may have for withholding the truth. *Sinclair v. Barker,* supra; III *Wigmore on Evidence* (Chadbourne Rev.) 167, (1970) § 774; 4 *Jones on Evidence* (6th Ed.) 97, § 24:12 (1972).

See also, *Rossano* v. *Blue Plate Foods, Inc.*, supra; *Superior Forwarding Co.* v. *Sikes*, supra. The mere fact that Brewer was cooperating with the police in investigating suspected illegal drug activities did not necessarily make him so hostile to the defendant that the trial judge had no discretion in determining whether leading questions were allowable. We find no abuse of discretion on the showing made here.

Appellant also asserts that the court erred in sustaining the state's objection to testimony offered through his witnesses Carnes and Gosnell. He contends that the evidence was admissible on the question of entrapment in that it had a bearing on his state of mind and willingness to engage in criminal conduct at the time of the alleged offense. In the case of Carnes, an objection was sustained as to evidence bearing on threats made against her by Bill Burnett, the officer who arrested Swaim and who engaged in the transaction upon which the charge against Swaim was based. The objection was that the question by which the testimony was elicited was leading. It obviously was. Appellant then attempted to show by this witness that Burnett, who had denied that he carried a gun or threatened or intimidated appellant, had threatened him, using a gun. This evidence was offered as an attack on Burnett's credibility. On that basis, the trial judge correctly ruled that this was a collateral inquiry and the testimony inadmissible.

Appellant has failed to specifically point out to us the testimony of Gosnell he contends was erroneously excluded or the purpose for which it was admissible. The state suggests that this testimony would have been that Burnett offered to sell drugs to Gosnell. If so, it seems that the testimony would have been irrelevant to the issue and, if an attack on Burnett's credibility, it was collateral. The state also suggests that it relates to other proffered testimony similar to that offered through the witness Carnes. The relevant inquiry was made by a leading question, to which an objection was sustained. Otherwise, the inquiry was about collateral matters. We find no error in the rulings as to these witnesses questioned here.

The judgment is reversed and the cause remanded for a new trial.